[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this case, the plaintiff claims that the defendants were hired by him to perform excavation work at his home located at 14 Lincoln Square, Jewett City, Connecticut. The plaintiff claims that the defendants breached the oral contract by walking off of the job site and were CT Page 6967 negligent by performing the work which they did in an unworkmanlike manner. The plaintiff has also asserted claims of misrepresentation and CUTPA violations. The court has stricken the claims of misrepresentation and CUTPA and leaves only the breach of contract count remaining.
The parties agree and the court finds the following facts to be true.
1. The plaintiff, Michael Daley, was and is the owner of certain real property with improvements thereon located at 14 Lincoln Square, Jewett City, Connecticut;
2. 14 Lincoln Square, Jewett City, Connecticut is a flag shaped lot with access to Lincoln Square by a 320 foot driveway that is shared with a neighbor. The driveway is about 12 feet wide and is basically gravel covered;
3. The plaintiff owns the driveway;
4. During 1999, the plaintiff was involved in the construction of a new home on the 14 Lincoln Square lot. He was acting as the general contractor;
5. A B Excavation is a partnership comprised of the defendants, Andrew Petrowski and Blaine Berthod;
6. The plaintiff and defendants had two meetings, the first at the job site and the second at plaintiff's residence, to discuss excavation for sewer and water line installation and connection and price negotiation;
7. At the meeting, the parties reached an agreement concerning the work to be performed and price;
8. The agreed upon work included excavation, installation of two manholes (in the driveway and in the street), installation of water lines, installation of sewer lines, necessary connections, backfill and finish grade. The excavation and installation of the lines was in the driveway and Lincoln Square;
9. The total agreed upon price was $5,400.00. Payments were to be made in three (3) installments: $1,700.00 td start, $1,700.00 when excavation and pipe installation reached the road and Lincoln Square and $2,000.00 upon installation of the manhole in Lincoln Square and governmental approval obtained;
10. The plaintiff testified that these terms were sketched out on paper, but neither he nor the defendants retained a copy; CT Page 6968
11. All payments were to be in cash;
12. On August 25, 1999, the defendant, Andrew Petrowski, completed an Application for Road Opening Permit with the Town of Griswold. The application was approved on August 25, 1999, by the Director of Public works for both sewer and water work;
13. On or about August 25, 1999, the plaintiff made the first payment of $1,700.00, in cash to the defendants;
14. Although the defendants were ready to begin work on or about said time, the manholes were on site. The parties entered into a separate agreement that defendants would travel to the supplier and pick up the manholes and deliver them to the job site. The cost for pickup and delivery was $400.00;
15. The defendants delivered the manholes and plaintiff paid defendant, Andrew Petrowski in cash;
16. The defendants commenced work, installed a manhole in the driveway and excavated out to the street to lay the sewer and water lines. In the process, the defendants struck and broke an existing waterline. They made efforts to repair the waterline;
17. During the excavation process, the defendants ran into ledge before they came to the street;
18. The ledge required blasting which went above and beyond the original agreement entered into by the parties;
19. The parties all acknowledged that additional cost would be involved regarding time and services related to the ledge removal. There was no provision for extras on the original agreement;
20. Although defendants failed to complete the second phase of the job, i.e., installation of pipes to the road, they requested the second stage payment and plaintiff complied by making a second payment of $1,700.00 in cash to the defendants;
21. Plaintiff made arrangements for a blaster to come out to the site. The defendants waited approximately six hours for a blaster to arrive but the blaster never arrived that day. Defendants removed their equipment from the job site;
22. The next day, defendant, Berthod, approached the plaintiff and demanded an additional $800.00 payment for the wait concerning the CT Page 6969 blasting. Plaintiff refused to pay explaining that he made a premature payment on phase two and wanted the installation to the road completed before any additional payments were made.
23. The defendants told plaintiff that they would not return to the job site and, in fact, never returned to the site.
The above facts are found to be true. The plaintiff also claims additional facts which are in dispute by the defendant.
1. As a consequence of defendants leaving the site, plaintiff hired Mel Wiesse of Wiesse Construction and Environmental Services, Inc. to complete the work left by defendants;
2. On September 30, 1999, Mel Wiesse completed an Application for Road Opening permit which was granted by Director of Public Works on September 30, 1999;
3. Plaintiff agreed to pay Mel Wiesse the amount of $5,400.00 to complete the work plus additional monies to repair defective work performed by defendants;
4. Plaintiff paid Mel Wiesse the amount of $1,500.00 to reset the one manhole the defendants set in the driveway. This manhole had to be reset because it did not fit with existing and set elevations;
5. Plaintiff also paid an additional $2,200.00 to Mr. Wiesse to reinstall the waterline that defendants broke. Mr. Wiesse set the waterline to the proper depth below surface grade, i.e., below frost line;
6. Plaintiff also paid Mr. Wiesse $1,700.00 to remove piled dirt from the defendants' excavation process from a neighbor's yard and to properly grade the yard. The dirt was left in mounds by defendants when they left the site;
7. The defendants also damaged railroad/landscape ties during the excavation process. Plaintiff paid Mr. Wiesse the sum of $500.00 to repair this damage;
8. The total monies expended by plaintiff to repair damages and correct defendant's work amounted to $5,900.00 as evidence by Mr. Wiesse's receipt to plaintiff;
9. Photographs introduced into evidence at trial indicated damage to plaintiff's retaining wall. These photographs reflected, in part, a crack CT Page 6970 through a large section of the stone retaining wall. Plaintiff testified that he received an estimate from Mr. Wiesse of $2,600.00 to repair the wall. The damage to the wall was caused by defendants' excavation and placement of its machinery upon the retaining wall;
10. Plaintiff testified to additional damages and costs. Plaintiff paid Perkins Blasting the sum of $680.00 for unnecessary services. Defendants' misplacement of the line system resulted in contact with ledge. Upon correction of defendants' misplacement of the lines by Mr. Wiesse, the ledge was avoided;
11. Plaintiff also paid an additional $150.00 for a new permit fee to the Town of Griswold when defendants left the job site. Plaintiff also paid an additional $500.00 for bond costs and $75.00 for fill due to soil erosion from the retaining wall as the result of the damage caused by defendants.
The court finds that the defendants commenced work on the site in August or September of 1999. The plaintiff showed the defendants where the continuation of the sewer line was to go. As they began work, the defendants found that someone had started a sewer line which was placed in backwards. The defendants then removed those sections and inserted them properly. When they were ready to install the first manhole, the plaintiff asked the defendants if they could travel to Monroe, Connecticut to pick up the two manholes which were to be delivered. Since they were not delivered, the defendants agreed and said that they would do that for an additional $100.00 per hour. It took about four hours to pick up and return with the manholes. After the defendants installed the first manhole they requested the second installment payment in accordance with the agreement. The plaintiff indicated that he could not pay that amount, but would give them part of it. He did pay $1,500.00. As the defendants continued to extend the ditch for the sewer line, they hit and broke a water line. The defendants repaired the waterline and returned it to the same level and place that it was when they hit the pipe. They also warned the plaintiff that the water pipe was too shallow and needed to be placed deeper to prevent freezing.
After the defendants continued work, they encountered a significant amount of ledge which needed to be blasted. The defendants were advised by the plaintiff to be at the site for the blasting. They stayed there for several hours, but the blaster never showed up. The plaintiff had agreed to pay the defendants $100.00 per hour while they waited for the blaster. The defendants told the plaintiff that the delay would cost him an additional $600.00 as they could have been doing other jobs as they waited for the blaster to remove the ledge. Shortly after that, the defendants informed the plaintiff that he would have to pay for the CT Page 6971 remainder of the second installment along with $400.00 for the trip to Monroe and $600.00 for making them sit and wait for the blaster before they could come back and complete the job. The defendants then say that the plaintiff asked them to follow him into his basement where he told him he did not have money to pay them but asked the defendants if they would accept cocaine as payment for the extra work and the remainder of the job. The defendants declined and walked off the job stating that they would not return until the plaintiff paid for the extra work and the remainder of the second installment. The plaintiff denies that he offered cocaine to the defendants in payment for the job.
The defendants claim that they were justified in walking off the job due to the plaintiff's refusal to make installment payments when due and his refusal to pay for the additional work on demand. They claim that the work they did do was done in a workmanlike manner and was in accordance with the specifications provided to them by the plaintiff. They also claim that they did not damage retaining walls and that the damage to the walls was already there when they were hired. The court agrees with the defendants in this regard and finds that, in fact, the work they did do was done in a workmanlike manner and in accordance with the specification. The court also finds that they didn't damage the retaining walls as claimed.
With respect to breach of contract, the general rule to be applied in construction cases in Connecticut is "the failure to make progress payments is a breach of contract so substantial as to render the contract nugatory." The Sillman Co. v. S. Ippolito Sons, Inc., et al,1 Conn. App. 72, 75 (1983). Furthermore, a party cannot recover on a contract unless he has fully performed his obligations under the contract, has tendered performance, or has some legal excuse for not performing. Ravitch v. Stollman Poultry Farms, Inc., et al, 165 Conn. 135,149 (1973). Finally, where a party seeking to enforce a contract is inmaterial breach of that contract, enforcement will be denied. Bernsteinv. Nemeyer, 213 Conn. 665, 666-67 (1990).
With regard to the second payment, the plaintiff claims he made a full payment of $1,700.00. The defendant, Petrowski, testified that he only paid between $1,200.00 and $1,500.00. The defendant's also claimed that the plaintiff was a convicted felon and his conviction was for possession of cocaine. The court finds that the plaintiff's refusal to pay the defendants for the remainder of the second installment or for the additional work, which the plaintiff agreed to pay for, was a breach of the contract so substantial that it rendered the contract void and justified the defendants in terminating the contract and walking off the job. CT Page 6972
The defendants also testified that the plaintiff told him he did not have money at that time but wanted to pay them in cocaine for the money he owed and for the rest of the job. The defendants claim that the plaintiff had no intention of paying them in any legal manner. By telling the defendants that he did not have enough money to pay them and by offering to pay the defendants in cocaine for the remainder of the job, the plaintiff breached the oral contract with the defendants and the defendants were justified in walking off the job.
The court finds that the testimony of the defendants in this regard is true and finds in favor of the defendants with respect to those issues.
With respect to the retaining wall, the plaintiff claims that the defendants damaged it possibly by backing heavy equipment over or along the wall. The defendants denied this and claimed that the wall was already damaged and it would be impossible for them to drive over it with the excavator and not have the excavator flip over. The court agrees with the defendants in this regard and finds that they did not damage the retaining wall.
 Conclusion
The court finds that the testimony and the evidence presented shows that the plaintiff breached the contract by not making progress payments, by not paying for extra work and by offering to pay defendants with an illegal controlled substance, namely cocaine. The court finds that the defendants were justified in walking off the job because of the plaintiff's actions and breach of performance. Furthermore, the plaintiff did not meet his burden of showing what proper damages were in that they were too speculative to justify any award.
D. Michael Hurley, Judge Trial Referee